UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO. 09-80113-CIV-MARRA/JOHNSON

THE VARIABLE ANNUITY LIFE
INSURANCE COMPANY (VALIC),
a corporation authorized to do
business in the state of Florida

      Plaintiff

vs.

NICHOLAS DULL

      Defendant.

_____/

## ORDER AND OPINION DENYING MOTION TO COMPEL ARBITRATION

**THIS CAUSE** is before the Court upon Nicholas Dull's Motion to Dismiss, or in

the Alternative, to Compel Arbitration and Motion to Dismiss for Failure to Join an

Indispensable Party [DE 31].  The motion to compel arbitration is fully briefed and

ripe for review.[1]  The Court has carefully considered the entire Court file, and is

otherwise fully advised in the premises.

_____

[1] The instant motion raises, in its title and conclusion only, that the complaint
should be dismissed, or in the alternative, that the case should be dismissed for
failure to join an indispensable party.  Defendant does not provide any analysis,
argument or authority for the motion to dismiss, therefore the Court has nothing to
address relative to that purported part of defendant's motion.  *See, e.g., Martell v.
Astrue,* No. 3:07-cv-83-J-25MCR, 2008 WL 793388, at *7 (M.D. Fla. Mar. 25, 2008)
(refusing to consider issues not fully briefed by plaintiff's counsel and citing cases).

## Background

Plaintiff, the Variable Annuity Life Insurance Company ("VALIC") specializes in providing retirement plans, including fixed and variable annuity contracts, to its clients, which are primarily employees of tax exempt I.R.C. § 403(b) organizations, such as healthcare, education, and governmental organizations.  Complaint ("Compl.") ¶ 7; Declaration of David Allen ("Allen Decl."), DE 4, Exhibit ("Ex.") 1, ¶ 3.  Until his resignation, Defendant Nicholas Dull ("Dull") was an employee of VALIC as a registered representative.  Registered Representative Agreement  (the "Agreement"), attached to the Complaint as Ex. A, ¶ 2.  Dull, like all other VALIC registered representatives, marketed and sold VALIC financial products to VALIC's 403(b) customers, as well as to other VALIC clients.  Compl. ¶ 10.

VALIC provided Dull access to confidential and proprietary information about group accounts, eligible participants and related assets under VALIC's management.  Compl. ¶ 11.  VALIC considered detailed customer information as their trade secret, and it is confidential and proprietary information.  Compl. ¶ 15.  VALIC entrusted Dull with its trade secrets and related customer information so that he could service those customer relationships for VALIC's benefit.  *Id.*

As a condition of employment with VALIC, Dull was required to execute the Registered Representative Agreement with VALIC Financial Advisors ("VFA"), a wholly-owned subsidiary of VALIC.  VFA is referred to in the Agreement as the "Broker-Dealer," and through the Agreement, Dull was authorized to market and sell

products offered for sale by and through VFA and VFA's "Affiliated Companies."  The

term "Affiliated Companies" is defined in paragraph 3 to include VALIC.  Compl. Ex.

A, ¶ 3.  VALIC is also defined as one of the "Protected Companies" for purposes of the

Agreement.  Compl. Ex. A ¶ 4g(1)(a).[2]  On or about January 30, 2002, Dull signed the

Agreement with VFA, effective February 1, 2002.  Compl. Ex. A.

Dull provided notice to VALIC on November 5, 2007, that he was voluntarily

terminating his employment effective November 14, 2007.  Compl. ¶ 30.  Dull then

went to work for AXA, a direct competitor of VALIC, in south Florida.  Compl. ¶ 31.

Prior to his resignation from VALIC, it is alleged that Dull performed searches of

VALIC's proprietary database to obtain client information.  Dull then allegedly

downloaded from VALIC's databases protected and valuable trade secrets and other

confidential and proprietary information.  Compl. ¶ 32.  Dull allegedly used a

portable data storage device to copy customer records and trade secrets.  Compl. ¶

33.  VALIC alleges Dull kept and subsequently used this highly confidential and

proprietary information.  Compl. ¶ 35.

---

[2]  "All files, records, documents, lists, software, equipment, and similar items pertaining to the business of Broker-Dealer and Protected Companies, whether or not prepared or maintained by Registered Representative, are the property of Broker-Dealer or Protected Companies and shall remain so and shall not be removed from the premises . . . under any circumstances without the prior consent of Broker-Dealer or Protected Companies."  Compl., Ex. A, ¶ 4g(2).  "Broker-Dealer's and Protected Companies' Trade Secrets include, but are not limited to, their customer identities and account information . . ."  Compl., Ex. A, ¶ 4g(3)(a).

Under the terms of his Agreement, Dull was required to return all VALIC property, whether or not prepared or maintained by Dull, immediately upon resignation.  Compl. ¶ 36.  VALIC brings this suit alleging he did not.  In his capacity as a financial advisor for AXA, VALIC believes Dull began a course of unfair and unlawful competition with VALIC for the business of his former VALIC clients.  Since Dull began competing unfairly with VALIC in October 2008, Valic alleges that he has caused the transfer of at least 39 accounts from VALIC to accounts managed by AXA, totaling approximately $1 million.  Compl. ¶ 40.  VALIC also alleges that within the year after his resignation, Dull improperly solicited and stole from VALIC 26 of his former VALIC customers and transferred them to AXA.  Allen Decl. ¶ 19.

VALIC has filed a Complaint for preliminary and permanent injunctive relief alleging that Dull has misappropriated VALIC trade secrets and confidential and proprietary information in violation of Chapter 688 and § 542.335, Florida Statutes (Claim 1); Breach of Contract (Claim 2); and intentional interference with existing and prospective business relations (Claim 3).  Dull moves to compel arbitration on the basis of paragraph 11(a) of the Agreement which provides that all disputes arising from or under the Agreement between Dull and the Broker-Dealer (VALIC's subsidiary, VFA) be resolved in accordance with the NASD's Code of Arbitration Procedures.  The motion will be denied.

<u>Discussion</u>

The Supreme Court has articulated a strong federal policy favoring arbitration agreements.  *See Moses H. Cone Mem'l Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24 (1983).  One of the purposes of the Federal Arbitration Act ("FAA"), 9 U.S.C. §§ 1 *et seq.*, is to "ensure judicial enforcement of privately made agreements to arbitrate."  *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 219 (1985).  As such, arbitration agreements must be "rigorously enforce[d]" by the courts.  *Id.* at 221.

The FAA guides the courts in enforcing arbitration agreements:  "A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."  9 U.S.C. § 2.  "The FAA directs courts to place arbitration agreements on equal footing with other contracts, but it 'does not require parties to arbitrate when they have not agreed to do so.'" *E.E.O.C. v. Waffle House, Inc.*, 534 U.S. 279, 293 (2002) (quoting *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)); *see also Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404 n.12 (1967) ("the purpose of Congress in 1925 was to make arbitration agreements as enforceable as other contracts, but not more so").  The FAA allows a party "aggrieved by the alleged failure, neglect, or refusal of another to arbitrate" under an otherwise valid arbitration clause to seek an order from a court compelling arbitration.  9 U.S.C. § 4.

When ruling on a motion to compel arbitration, the Court must engage in a two-step inquiry: first, the Court must determine whether the parties agreed to arbitrate the dispute.  *Klay v. All Defendants,* 389 F.3d 1191, 1200 (11th Cir. 2004). Then, the Court must determine whether "legal constraints external to the parties' agreement foreclosed the arbitration of those claims."  *Mitsubishi Motors Corp. V. Soler Chrisyler-Plymouth*, 473 U.S. 614, 628 (1985).  Whether a party has agreed to arbitrate an issue is a matter of contract interpretation:  "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit." *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001) quoting *United Steelworkers of America v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582 (1960).

The arbitration clause at issue provides, in pertinent part, as follows:

11.    <u>Remedies for Breach</u>

    a.    Disputes between Registered Representative and Broker-Dealer.

        Disputes arising from or under the terms of this Agreement between Registered Representative and Broker-Dealer shall be resolved in accordance with the NASD's Code of Arbitration Procedures.  Should the NASD decline jurisdiction over any dispute between Registered Representative and Broker-Dealer, or should any dispute not be eligible for submission to the NASD under its Code of Arbitration Procedures, such dispute shall be resolved under subparagraph 11.b., below.

    b.    Other Disputes.

        (1)    All other disputes arising from or under the terms of this Agreement, including, without limitation, all disputes with any Affiliated Company and/or Protected Company that is not a

member of the NASD shall be resolved in a court of competent
jurisdiction.

Compl., Ex. A.  It is undisputed that Dull is the Registered Representative, VFA is the

Broker-Dealer, and VALIC is an Affiliated Company which is not a member of the

National Association of Securities Dealers ("NASD") (now "FINRA").[3]  Compl., Ex. A, at

title, & ¶¶ 2, 3.  According to the unambiguous terms of the Agreement, any dispute

between VFA and Dull must be resolved through binding arbitration (¶ 11(a)) and any

dispute between VALIC and Dull must be resolved in a court of competent jurisdiction

(¶ 11(b)(1)).  According to the Agreement's express terms, the Court agrees with

VALIC that not only is there no arbitration agreement between Plaintiff VALIC and

Defendant Dull, there is an agreement not to arbitrate.  See ¶ 11(b)(1).

In arguing that the instant dispute must be arbitrated, Dull cites exclusively to

paragraph 11(a) and asserts that "the affiliation between VALIC and [VFA] is very

strong and interrelated.  Both companies are under substantially common control and

───────────────

[3]  FINRA's jurisdiction is limited to claims between or among members and/or
associated persons on both sides of the dispute.  FINRA Rule 13200.  VALIC states it is
not a member or associated person of FINRA, and Dull does not dispute this assertion.
Since Rule 13200 permits arbitration only at the insistence of members or associated
persons against members or associated persons, this dispute is outside the scope of
FINRA's jurisdiction.  Recently, FINRA rejected jurisdiction over VALIC.  An NASD
arbitration panel in this NASD region declined jurisdiction over VALIC despite a court
order compelling arbitration.  The NASD arbitration panel held that "under the NASD
Code of Arbitration Procedure, the NASD has no jurisdiction over VALIC [Rules 10101
and 10201] because it is not a member of the NASD, has not consented to NASD
jurisdiction and is not a signatory to the agreement purporting to give rise to the
obligation to arbitrate." See VALIC v. Joiner, Claim No. 06-03069, July 10, 2006. DE
36, Ex. 3.

ownership.  Dull's NASD registration was a legal obligation and an integral part of his relationship with both VALIC and [VFA], and a requirement for his employment at VALIC."  DE 31 at 4-5.

In cases involving entities that have a parent-subsidiary relationship, a parent may be bound to arbitrate by piercing of the corporate veil where the subsidiary is merely the instrumentality and the parent is the subsidiary's alter ego.  *Fisser v. International Bank,* 282 F.2d 231 (2d Cir. 1960); *Koreska v. Perry-Sherwood Corp.*, 253 F. Supp. 830 (S.D. N.Y. 1965), order aff'd, 360 F.2d 212 (2d Cir. 1966); *WorldCrisa Corp. v. Armstrong*, 129 F.3d 71 (2d Cir. 1997); *Matter of Arbitration Between Keystone Shipping Co. and Texport Oil Co.*, 782 F. Supp. 28 (S.D. N.Y. 1992); *Doctor's Associates, Inc. v. Distajo*, 66 F.3d 438 (2d Cir. 1995); *Hidrocarburos y Derivados, C.A. v. Lemos,* 453 F. Supp. 160 (S.D. N.Y. 1977).  Generally, though, a corporate relationship alone will not be sufficient to bind a nonsignatory to an arbitration agreement.  *Thomson-CSF, S.A. v. American Arbitration Ass'n,* 64 F.3d 773, 776 (2d Cir. 1995) (cataloguing the various theories recognized for binding nonsignatories to an arbitration clause.  After noting that each theory is based on "common law principles of contract and agency law," the court set forth the following list:  (1) incorporation by reference; (2) assumption; (3) agency; (4) veil-piercing/alter ego; and (5) estoppel).  In *Thomson-CSF,* the court below compelled a nonsignatory parent corporation to arbitrate based on an arbitration agreement between its subsidiary and one of the subsidiary's suppliers.  The Court of Appeals reversed.  After analyzing

the record before it under each of the enumerated theories, the court held that the district court lacked authority under common law contract and agency principles to compel the parent to arbitrate even though the claim against it arose out of the relationship between the subsidiary and the supplier.

It is not enough that the two entities are affiliated; instead, the two entities must be essentially one entity. *Keystone Shipping Co*, 782 F. Supp. at 31. In order to justify piercing the corporate veil and have the arbitration agreement enforced against the alter ego, the relationship between the signatory and the alter ego must be one where the alter ego so dominates and controls the affairs of the signatory such that the signatory cannot be said to have any independent existence or will of its own. *Id*. Moreover, "absent findings of fraud or bad faith, a corporation . . . is entitled to a presumption of separateness from a sister corporation . . . even if both are controlled by the same individuals." *Id*. at 30-31 quoting *American Renaissance Lines, Inc. v. Saxis S.S. Co.*, 502 F.2d 674, 677 (2d Cir. 1974).

Dull has not made any allegation or presented any evidence to support the notion that VALIC exercised dominance and control over VFA. *Builders Federal (Hong Kong) Ltd. v. Turner Const.*, 655 F. Supp. 1400, 1406 (S.D. N.Y. 1987) (corporate parent must exert the requisite degree of control over its subsidiary such that there is abandonment of separate corporate structures, intermingling of corporate finances and directorship, and in essence the subsidiary must cease to function as a distinct entity); *Thomson-CSF*, 64 F.3d at 776. Dull has not alleged any indicators of this type

of relationship between VALIC and VFA that justifies piercing the corporate veil.  Dull alleges only that the companies are affiliated.  A lone allegation of mere affiliation, however, does not suggest, let alone prove, that VALIC controls VFA or that they are essentially one entity.  Accordingly, the Court cannot pierce the corporate veil and require VALIC to arbitrate this dispute.  This is especially true where, as here, the Agreement specifically requires any dispute between VALIC and Dull to be resolved in a court of competent jurisdiction.  Since VALIC never agreed to arbitrate, it is hereby

ORDERED AND ADJUDGED that Nicholas Dull's Motion to Dismiss, or in the Alternative, to Compel Arbitration and Motion to Dismiss for Failure to Join an Indispensable Party [DE 31] is DENIED.  *Klay v. All Defendants,* 389 F.3d 1191, 1200 (11th Cir. 2004); *Telecom Italia, SpA v. Wholesale Telecom Corp.*, 248 F.3d 1109, 1114 (11th Cir. 2001).

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, Florida, this 21st day of September, 2009.

KENNETH A. MARRA
United States District Judge

copies to:
All counsel of record